UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 26-10075-GAO

KEVIN BARRY,
Plaintiff,

v.

NTH DEGREE, INC.,
Defendant.

OPINION AND ORDER
September 30, 2026

O'TOOLE, D.J.

This case arises from a dispute between plaintiff Kevin Barry, an employee and union member, and his employer, defendant Nth Degree, Inc., over whether Nth Degree violated the Massachusetts Wage Act with respect to its pay-disbursement practices (Count I) and thus consequently retaliated against Barry for complaining to management about those alleged violations (Count II – Retaliation; Count III – "Retaliatory Hostile Work Environment").

Before the Court is Nth Degree's motion to dismiss the amended complaint and/or to compel arbitration instead of judicial litigation. Nth Degree argues for dismissal on the theory that Barry's claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"). Alternatively, Nth Degree asks the Court to compel arbitration because Barry's claims are subject to a binding arbitration provision under the collective bargaining agreement ("CBA") between the parties. Barry opposes the motion and has filed a consolidated cross-motion seeking to remand the dispute to the Massachusetts Superior Court, arguing that the Court lacks jurisdiction over his claims.

For the reasons explained below, the Court concludes that all of Barry's claims are covered by the CBA's binding arbitration provision. Accordingly, the motion to remand is DENIED, the motion to compel arbitration is GRANTED, and the case is DISMISSED without prejudice.

## **I. Jurisdiction**

In Barry's view, this Court lacks subject-matter jurisdiction because none of the state-law claims alleged are preempted under § 301, thus vitiating federal-question jurisdiction. The Court concludes that it has federal-question jurisdiction under § 301 because the claims alleged under state law satisfy the standard for removal on the basis of complete preemption.

"'[C]omplete preemption' . . . 'means that the claim itself arises under federal law' for purposes of the well-pleaded complaint rule." See Rueli v. Baystate Health, Inc., 835 F.3d 53, 57 (1st Cir. 2016) (quoting Hughes v. United Air Lines, Inc., 634 F.3d 391, 393 (7th Cir. 2011)). Where, as here, a plaintiff "bring[s] multiple state-law claims based on the 'same nucleus of operative facts,'" the entire action is "removable" so long as "one of [the claims] is completely preempted." Id. at 59 (quoting BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 833 (1st Cir. 1997)). A state-law claim is completely preempted by § 301 if it is either (1) "founded directly on rights created by collective-bargaining agreements," or (2) "substantially dependent on analysis of a collective-bargaining agreement." Id. at 58 (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987)).

Nth Degree relies on the second of these rubrics. A claim is properly determined to be "substantially dependent on analysis of a collective bargaining agreement," id. (quoting Caterpillar, 482 U.S. at 394), if its "resolution . . . *arguably* hinges upon an interpretation of the collective bargaining agreement," id. (emphasis added) (quoting Flibotte v. Penn. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997)). In this context, "interpretation" means something more than

"mere consultation" of the CBA. See Lydon v. Bos. Sand & Gravel Co., 175 F.3d 6, 10 (1st Cir. 1999). "In practice, this test boils down to whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement." See Flibotte, 131 F.3d at 26.

Count I, Barry's Wage Act claim, meets this permissive standard. The gravamen of Count I is that Nth Degree violated the Wage Act when, on several occasions, it allegedly mailed Barry's paycheck "after the statutory due date." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss His First Am. Compl., or to Compel Arb., and Cross-Mot. to Remand ("Pl.'s Opp'n") at 3 (dkt. no. 16).) That allegation relies on the Wage Act's mandate that wages must be paid "within six days of the termination of the pay period during which the wages were earned." (See id. (quoting Mass. Gen. Laws ch. 149, § 148).)

Nth Degree responds that in order to resolve Count I, the Court must interpret certain terms of the CBA. Therefore, Nth Degree asserts, Count I is completely preempted. In support of that position, Nth Degree points to Article 30 of the CBA, which is titled "Pay Period."[1] (Def.'s Mem. in Supp. of Mot. to Dismiss Am. Compl., Ex. B ("CBA") Art. 30, ¶ 1 (dkt. no. 13–2).) Among other things, Article 30 states that "[p]aychecks shall be available to an employee no later than 12:00 P.M. on the Thursday following the pay-week (Sunday through Saturday) or such pay shall be mailed to [the employee's] home." (Id.) Article 30 further provides that "[e]mployees shall have the option of direct deposit of their paychecks, or pay card, if available." (Id.) According to Nth Degree, "[b]ut for" these provisions of the CBA, Barry "would have been paid by direct deposit,

[1] Although it is not attached to the amended complaint, the Court may nevertheless consider the CBA to determine its subject-matter jurisdiction. See Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000) (explaining that courts "may consider extrinsic materials" bearing on subject-matter jurisdiction when adjudicating motions under Rule 12 of the Federal Rules of Civil Procedure).

and he would have no claim" under the Wage Act. (See Def.'s Mem. in Supp. of Mot. to Dismiss Am. Compl. at 6 (dkt. no. 13).)

"[A]t the outset of [the] case," Rueli, 835 F.3d at 58, the Court "cannot know the exact contours of the wage dispute and the precise CBA terms likely to require interpretation cannot be certain," see Cavallaro v. UMass Mem'l Healthcare, Inc., 678 F.3d 1, 8 (1st Cir. 2012). However, the ordinary meaning of the foregoing contractual language cited from Article 30 suggests that the CBA purports to govern not only the deadlines, but also the methods by which covered employees are paid. Accordingly, at this early stage of the litigation, the Court concludes that Count I, the Wage Act claim, "arguably hinges upon an interpretation of the [CBA]," see Rueli, 835 F.3d at 58 (quoting Flibotte, 131 F.3d at 26), and is thus completely preempted.

Because at least one of the plaintiff's claims is completely preempted, this Court has federal-question subject-matter jurisdiction over the entire removed action pursuant to § 301. See id. at 59.

## II. Arbitration

Where, as here, the operative CBA "contains an arbitration clause, there is a presumption of arbitrability." Johnson Controls Sec. Sols., LLC v. Int'l Bhd. of Elec. Workers, Loc. 103, 24 F.4th 87, 90 (1st Cir. 2022) (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)). That presumption, moreover, is "a heavy" one. See, e.g., Rueli, 835 F.3d at 59. It "requires a court to permit a grievance to proceed to arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Johnson Controls, 24 F.4th at 90 (quoting AT & T Techs., 475 U.S. at 650). The presumption "applies unless the party opposing arbitration rebuts it." Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 7 (1st Cir. 2014). To do so, the opponent must point to "a

specific and 'express provision excluding a particular grievance from arbitration'" or proffer "the most forceful evidence of a purpose to exclude the claim." Johnson Controls, 24 F.4th at 90 (quoting AT & T Techs., 475 U.S. at 650). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)).

Nth Degree invokes Article 7 of the CBA in support of its claim that the Court should compel arbitration. Article 7 establishes a mandatory three-step procedure for settling "any controversy, complaint, misunderstanding, or dispute between the parties to this Agreement relating to wages, hours or other conditions of employment." (CBA, Art. 7, § 1.) If a grievance remains unresolved after steps one and two of the procedure, then Article 7 provides that the parties "shall" proceed to the third step, a "final and binding" arbitration. (See id. §§ 1–3.)

Barry's claims fall within the plain meaning of the CBA's definition of "grievance." For example, Barry's allegation that Nth Degree failed to the meet the statutory deadlines set forth in the Wage Act fits comfortably within the ordinary meaning of a "dispute" that "relat[es] to wages." The same may be said of his other claims. Article 7 thus does not permit the Court to conclude "with positive assurance" that Barry's grievances are not covered by the arbitration provision. See Johnson Controls, 24 F.4th at 91. Notably, Barry does not attempt to rebut the presumption in favor of arbitration by directing the Court to another "express" provision of the CBA or by proffering "forceful evidence" of an intent to exclude his claims. See id. at 90 (quoting AT & T Techs., 475 U.S. at 650). Instead, he appears to argue, erroneously, that Nth Degree bears the burden of "identify[ing]" a provision in the CBA "that clearly and unmistakably delegates questions of Massachusetts statutory interpretation—such as the meaning of 'paid' in G.L. c. 149,

§ 148—to an arbitrator." (Pl.'s Opp'n at 17.) For reasons already explained, Nth Degree bears no such burden.

In short, Barry has not rebutted the "heavy presumption," Rueli, 835 F.3d at 59, in favor of arbitration.

## III. Conclusion

For the foregoing reasons, the motion to remand (dkt. no. 15) is DENIED, the motion to compel arbitration (dkt. no. 12) is GRANTED, and the case is DISMISSED without prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge